**David Thomas CORBIN, Appellant,**

v.

**Frances P. COWAN, Susan Abbott and Dennis E. Yoder and Sara G. Yoder, Appellees.**

Superior Court of Pennsylvania.

Argued May 19, 1998.

Filed July 14, 1998.

Reargument Denied Sept. 17, 1998.

AVAILABLE. IF THE MONEY ORDER HAS NOT BEEN VALIDLY ISSUED OR HAS BEEN FRAUDULENTLY NEGOTIATED, IT WILL BE RETURNED. KNOW YOUR ENDORSER (sic)

CASH ONLY IF RECOURSE IS AVAILABLE." *Hong Kong Importers, Inc., v. American Express Co.,* 301 So.2d 707, 708 (La.App.1974).

David T. Corbin, Pro Se, appellant.

Peter J. O'Donnell, Lewistown, for Frances P. Cowan & Susan Abbott, appellees.

Before CAVANAUGH, POPOVICH and BROSKY, JJ.

CAVANAUGH, Judge:

This is an appeal from a judgment entered in favor of appellee-defendant Frances P. Cowan and against appellant-plaintiff David Corbin, which established the common boundary line of their adjoining properties. We affirm.

The present dispute involves the ownership rights of a dirt road that runs along the eastern side of Cowan's property and the western side of appellant's property. Each party claims that the road is on his or her respective property. This dispute led appellant to commence an action to quiet title. Following a nonjury trial, the court entered a verdict in favor of Cowan, concluding that the disputed road was part of her property. The court determined, apparently under the consentable line doctrine, that a fence, which ran to the east of the disputed dirt road, marked the Corbin–Cowan property line. The court also found that appellees-defendants Abbott and Yoders possessed a right of way in the dirt road, which would give them access to the public road.

Appellant proffers three arguments in this appeal: (1) the trial court's verdict was not supported by competent evidence; (2) the court erred when it allowed hearsay testimony into evidence; and (3) the court abused its discretion due to the bias it held toward appellant.

With respect to the first issue, appellant contends that he presented the only professional expert testimony (a surveyor) and that this expert testified that the disputed dirt road was on appellant's property.

When reviewing a trial court's decision in a quiet title action, we must determine whether the court's findings of fact are supported by competent evidence. *Thompson v. Railroad Preservation Society*, 417 Pa.Super. 216, 220–22, 612 A.2d 450, 452 (1992). The trial court's decision will not be reversed absent an error of law or capricious disregard of the evidence. *Id.*

An action to quiet title may be brought "where an action of ejectment will not lie, to determine any right, lien, title or interest in the land." Pa.R.C.P. 1061(b)(2). "The question of what is a boundary line is a matter of law, but where a boundary line, or corner, is actually located is a question for the trier of fact." *Plott v. Cole*, 377 Pa.Super. 585, 589, 547 A.2d 1216, 1219 (1988). "The primary function of the court faced with a boundary dispute is to ascertain and effectuate the intent of the parties at the time of the original subdivision." *Id.* However,

> [w]hen a right or title is of ancient origin or where the transaction under investigation is so remote as to be incapable of direct proof by living witnesses or by the ordinary documentary evidence, the law, of necessity relaxes the rules of evidence and requires less evidence to substantiate the fact on controversy. For example, ancient maps, records, surveys, ancient town plots, historical books which have generally been treated as authentic, reports made by disinterested parties apparently conversant with the facts and now dead, have been held admissible as furnishing evidence of remote transactions. Maps, surveys, monuments, pedigree and even reputation evidence have been held to be admissible to establish boundaries. Moreover, boundaries may be established by circumstantial as well as by direct evidence.

*Hostetter v. Commonwealth*, 367 Pa. 603, 606, 80 A.2d 719, 720 (1951).

We have reviewed the testimony of appellant's surveyor. We note that he could not pinpoint the exact location of the boundary line, but only arrived at a general location based on the facts he knew to be true and certain assumptions. His survey and analysis established several possible locations of the Corbin–Cowan boundary line, although each would place the disputed area within appellant's property. Defense counsel effectively cross-examined the surveyor regarding the accuracy of the survey. During cross-examination, the surveyor acknowledged that the fence line (along which the court ultimately determined the common boundary ran) would typically be considered evidence of a boundary. The trial court apparently declined to credit the surveyor's testimony, but instead, accepted evidence that established the boundary under the consentable line doctrine.

"The doctrine of consentable line is a rule of repose for the purpose of quieting title and discouraging confusing and vexatious litigation." *Plott* at 592, 547 A.2d at 1220. There are two ways to prove a binding consentable line: by dispute and compromise, or by recognition and acquiescence. *Id.* Recognition and acquiescence, which is applicable in this case, requires: (1) a finding that each party has claimed the land on his side of the line as his own: and (2) a finding that this occupation has occurred for the statutory period of twenty-one years." *Plott* at 594, 547 A.2d at 1221.

Here, the court determined that a fence which ran along the eastern side of the disputed dirt road marked the common boundary. The record reflects that both appellant and Cowan claimed at least the land on their respective sides of the fence. Thus, the first condition has been satisfied.

We must now determine whether the appellee was in possession of the disputed area for the statutory period of twenty-one years. Here, appellee Cowan has owned her parcel since 1973. Thus, she has met the requisite twenty-one year period. Even if she had not owned her property for the

required twenty-one year period, the possession of successive occupants may be tacked, where "each predecessor claimed title to the property in dispute, and in transferring to his successor, purported to include it." *Plott* at 596, 547 A.2d at 1222.

◼ Here, the deeds in Cowan's chain of title contain nearly identical descriptions of the land. The prior titleholder claimed the disputed tract and purported to convey the entire tract, including the disputed area, to Cowan. The record also contains sufficient evidence of possession during this period. The determination of what constitutes actual possession of property depends on the facts of each case and the character of the premises. *Glenn v. Shuey*, 407 Pa.Super. 213, 221–23, 595 A.2d 606, 611 (1991). There may be actual possession of property under an infinite variety of circumstances. *Id.*

◼ The record indicates that a fence existed on the eastern side of the dirt road from at least the early 1950's. Appellant's predecessor in title recognized this fence line as the common boundary: he maintained his property only up to the fence and often used a lane, other than the disputed one, for access. Cowan's predecessor in title maintained the disputed area and cut down trees from this area which she sold for veneer wood. She also regularly used the disputed lane for access. In view of the evidence of record, we conclude that the evidence supports the existence of a consentable line.

Appellant next argues that the court erred when it allowed hearsay testimony into evidence. The objectionable evidence concerned testimony presented by Cowan, from a nearby landowner, that appellant's predecessor in title believed that the disputed area did not belong to him. Cowan concedes that the objectionable testimony is hearsay, but argues that it is nevertheless admissible under an exception to the hearsay rule. We agree.

◼ Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted. *Heddings v. Steele*, 514 Pa. 569, 572–74, 526 A.2d 349, 351 (1987). Declarations against pecuniary or propriety interest are, however, admissible as a hearsay exception. This is because "[p]eople are apt to speak freely and falsely in their own favor but are reluctant to speak falsely to their pecuniary or proprietary detriment." *Id.* at 575, 526 A.2d at 352 (quoting Jefferson, ***Declarations Against Interest, An Exception to the Hearsay Rule***, 58 Harv.L.Rev. 1, 8 (1944)).

◼ Here, a predecessor in title of appellant stated that he did not believe he owned the area that is now in dispute. This statement was clearly adverse to the declarant and was admissible as a declaration against interest. As this court has stated: "Declarations of a prior owner *against his interest* made while holding legal title to the property are admissible in evidence against him and *against* those claiming under him." *Kovach v. General Telephone of Pennsylvania*, 340 Pa.Super. 144, 149–50, 489 A.2d 883, 886 (1985)(quoting *Brown v. McConnell*, 173 Pa.Super. 94, 98, 93 A.2d 896, 898 (1953)(emphasis in original)).

◼ Additionally, we find that the objectionable testimony would be admissible under the "state of mind" exception.

Pennsylvania recognizes a "state of mind" exception to the hearsay rule.

> Often a person's state of mind, knowledge, intent, motive, emotion, competency, or sanity is relevant in a case. That person's contemporaneous statements are an obvious source of information as to the relevant state of mind, and such statements are admissible under the state of mind exception to the hearsay rule.

*Commonwealth v. Hess*, 378 Pa.Super. 221, 227, 548 A.2d 582, 585 (1988) (citations omitted). Here, the hearsay statement was not offered to prove the truth of the matter asserted – that those in appellant's chain of title did not, in fact, own the disputed area. Rather, it was offered to show the state of

619

mind of appellant's predecessor in title – that he did not *believe* he owned the disputed area. Such evidence was material and probative as to the possession of the disputed area during the twenty-one year statutory period. Appellant's second issue is meritless.

 Finally, appellant contends that the trial court abused its discretion due to its bias toward him. A claim of partiality, bias or prejudice is one of the most serious charges that can be leveled against a trial judge. *Nemeth v. Nemeth*, 306 Pa.Super. 47, 53–55, 451 A.2d 1384, 1388 (1982). In order to prevail on such a claim, the record must clearly show prejudice, bias, capricious disbelief or prejudgment. *Id.* Here, the remarks of the trial court amounted to a request to the parties to try to arrive at an amicable settlement to the dispute. The judge did remark, apparently in exasperation, at the trial's conclusion, that he doubted that a settlement would occur because it was his impression that appellant and his side would be a problem. Although such a remark can be characterized as intemperate in nature, we cannot conclude that it alone establishes bias or partiality. We have reviewed the record in its entirety and have found that the judge did not exhibit partiality, bias or prejudgment at any point in the proceeding. The single remark of the judge came at the end of trial and was made only after the judge witnessed the uncompromising nature of appellant during the trial. In any event, the record evidence and controlling law amply supports the court's decision.

Judgment affirmed.